MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Gwendolyn M., hereinafter referred to as the biological mother, and Anthony G. who is the male biological parent of the minor children Tyneisha (born April 20, 1990) and Tyshawna (born March 27, 1991). The petition also seeks to terminate the parental rights of the minor child Louis' male biological parent who is likely to be Tony Lee A., and who possibly may be a man named Patrick B. Louis is the oldest of the three children. He was born June 8, 1988 and he is just nine years old. Both of Louis' possible male biological parents have been included in an amended petition and both have been served by constructive notice. CT Page 6866
The court finds that the biological mother has appeared and has a court appointed attorney, as well as a court-appointed guardian ad litem. While the biological mother has taken some interest in the proceedings, she failed to appear for trial even though she was aware of the time and location of these proceedings. The court finds that the three possible named fathers have been served by constructive notice and both alleged fathers of Louis have failed to appear. The only parent who had no choice in the matter, Anthony G., was brought to court from the state correctional facility where he is presently incarcerated for a narcotics related offense. One can only speculate whether he too, might have defaulted in appearance were it not for the writ of habeas corpus issued by the court to secure his attendance. Since he had court appointed counsel and he was brought to court, he resisted the termination of his parental rights. He wishes to have visitation while incarcerated, as he does with his four other children by three different mothers, who apparently bring those children to visit him.
This case has been pending in the court system since August 27, 1992. None of the male biological figures has ever actively supported the children, has had any physical involvement or has demonstrated any interest in the children in the past five years except for Anthony who visited Tynehsia twice in early 1995. The court finds that it is unnecessary to appoint an attorney for the male biological parents of Louis since it would be a futile act, their whereabouts being unknown and they have never taken any role in the child's life. The court has jurisdiction in this matter; there is no pending action affecting custody of the children in any other court and reasonable efforts have been made to locate the missing parents.
The court having read the verified petitions, the social studies, the various documents entered into evidence and heard the testimony of two case workers, makes the following findings by clear and convincing evidence.
On August 27, 1992, the predecessor commissioner to the Department of Children and Families ("DCF"), filed a neglect petition alleging that the children's mother had stabbed the childrens' grandmother resulting in incarceration for the mother and hospitalization for the grandmother. None of the children's fathers stepped forward to provide a home for the children. On November 5, 1992 the children were adjudicated as uncared for. CT Page 6867
Mother was sentenced to prison for the assault and was released on August 5, 1994. The children's biological mother has been unable to provide a home or security for herself, let alone her children. She has led a dysfunctional life of daily drug abuse[2]. On February 16, 1996 she gave birth to another child. This male child, born at 28 weeks gestation, weighted just over two pounds and tested positive for the presence of cocaine and Darvon. This child is not the subject of the present petition.
The court finds by clear and convincing evidence that the children have been found in a prior proceeding to have been uncared for. Further, the children's female biological parent has failed to rehabilitate herself, she has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in the lives of these children.
With respect to Anthony G., during most of the pendency of this case, he limited his interest to principally contesting paternity of all but Tyneshia. Paternity testing subsequently confirmed his paternity of Tyshawna also. In Latin there are two different words for "father". "Genitor" means a biological father or direct lineal ancestor. "Pater" means one who treats or cares for and takes responsibility for a child. It is a position that is earned and respected. Anthony G. is a progenitor of fatherless children. He has inseminated four different women resulting in the birth of six children. He has failed to support any of the children except for some court ordered modest payments which were ordered for his oldest son, Anthony Jr., one of his other four children.
Anthony testified in court. He was unable to say that he provided any physical, emotional, spiritual, or any financial support to any of his six children except for whatever payments he may have made pursuant to a court order. He views his failure to visit these children when he was not incarcerated as a "misunderstanding" between him and DCF. He indicates that he didn't have time to be a father, but now he finds his "responsibilities are a little easier." It was unclear if he meant that because he is older or because he is incarcerated. He maintains that he is both a good father and has good relationships with his other children. He wants Tyneshia and, now, Tyshawna to visit him. His notion of being a father is that the children he has spawned should visit him in jail. CT Page 6868
Anthony was not there for Tyneshia and Tyshawna when they were infants; wet, hungry and crying. He was not there to change them or wipe their runny nose. He was not there to pay the rent or buy them clothes or see the children off to school. He did not read "Green Eggs and Ham" or help their lessons "Sam I am" or send them off to peaceful sleep with "Goodnight Moon" or "Little Bo-Peep". He did not go off to work each day and return at night to help them read or learn to pray or watch them play. And when they woke afraid at night of some strange demon in their dream, Anthony was not there to console them. When Tyshawna and Tyneshia learned to ride a bike, he was not there to catch them or run a long with the bike and let go just at the right time. Parenting is very much like that; knowing when to provide support and when to let go. Anthony did not give up his nights of drinking and dancing to stay home with the girls. Anthony did not push them on their first swing ride, or hold their little stomachs high in the water to help them float and learn to swim. He was not troubled that the children's mother was a "druggie" and that his little girls were in foster care. That his children were life-long recipients of public assistance did not trouble Anthony.
Anthony demonstrated no responsibility to these children whatsoever, neither as a parent nor a friend, but now maintains that these same children he ignored before should be brought to him by the Department of Children and Families at state expense so that they may view him and he, them. It is of absolutely no apparent concern to Anthony that prison may not be a child-friendly environment and that these children may not wish to be exposed to that. The court is not amused by his lack of understanding of parenthood and insistence upon his wholly unearned and undeserved "rights".
ADJUDICATION
With respect to the statutory grounds for termination of parental rights the court finds by clear and convincing evidence that with respect to Anthony G., Tony Lee A., and Patrick B., the persons named in the petitions as the male biological parents of these children, that they have failed to support these children or manifest any parental interest whatsoever and have abandoned them as that term is defined in General Statutes § 17a-112c (3)(A). The court finds by clear and convincing evidence that these children were previously found to be have been uncared for on November 5, 1992. The court further finds the mother and all CT Page 6869 named "fathers" have failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the children that they could assume a responsible position in the lives of these children.
The court further finds by clear and convincing evidence that with respect to the named fathers that there is no on-going parent child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing day to day basis the physical, emotional, moral or educational needs of the child and to allow further time for the establishment or re-establishment of the parent child relationship would be detrimental to best interest of these children. The court finds that these grounds have existed for more than one year.
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e):
1) The timeliness, nature and extend of services offered. The court finds that psychological and psychiatric services were offered, visitation was offered and foster care was provided by DCF.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The court concludes that the department waited an inordinate length of time to pursue termination of parental rights in this case. The parents had more than enough time to demonstrate their desire and concern for reunification and to achieve rehabilitation. The fathers of these children were not offered services because they could not be located and have never had an active role in the children's lives. Anthony G. was offered visitation which he failed to regularly attend. He was unable to be located for much of his pre-incarceration time and accordingly was not available for the delivery of services.
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fulfill or comply with any of the expectations which required her to seek help and treatment for her substance abuse issues. Anthony did not pursue any counseling, nor visit as regularly as permitted. CT Page 6870
4) The feelings and emotional ties of the children with respect to the parents and foster parents, etc. The court finds that the children have no current on-going relationship with their parents. Their mother has a visiting relationship with the children. Regrettably, after nearly five years in the same foster home, which was not a pre-adoptive placement, the children have just recently been moved.
5) As to the age of the children. The court has indicated earlier the dates of birth of the children. Louis is now nine. Tyneshia is now seven and Tyshawna is six.
6) The efforts the parent have made to adjust their circumstances or conditions. The court finds that the mother has not made any meaningful attempt to adjust her circumstances, conduct or condition to facilitate reunification. While the mother has maintained incidental visitation through the years she has done nothing to rehabilitate herself as a parent. The only meaningful way that the mother could resume custody of her children was to address her substance abuse issues which she seems unable to do.
7) The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the children. There was no unreasonable conduct noted by DCF which offered services and provided transportation for visitation for many years in this case.
DIPOSITION
Based upon the foregoing findings, the court determines that it is in the children's best interest for a termination of parental rights to enter with respect to the mother Gwendolyn M. and the male biological parents Anthony G., Tony Lee A., and Patrick B. and accordingly a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for these children for the purpose of securing an adoptive family. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by State and federal law.
Francis J. Foley, Presiding Judge Child Protection Session CT Page 6871